[No. 39-40706-2.    Division Two.    December 30, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD L. POTTS, *Appellant.*

*Van Buskirk, Haas & Rorem* and *Henry Haas,* for appellant (appointed counsel for appeal).

*Ronald L. Hendry, Prosecuting Attorney, Joseph D. Mladinov, Special Counsel, Eugene G. Olson, Chief Criminal Deputy,* for respondent.

PETRIE, J.—Defendant, Richard L. Potts, appeals from the entry of judgment and sentence following conviction of the crime of illegal possession of marijuana. Trial was before the court with the right to a jury being waived.

In his first assignment of error, defendant claims the contraband was discovered as the result of an illegal search and seizure. The pertinent facts are as follows: On the evening of September 30, 1968, Trooper Dorsey of the Washington State Patrol observed the defendant speeding south on Pacific Highway. A chase ensued during which defendant repeatedly crossed the center line of the highway and ran through several stop lights. It culminated within the city limits of Tacoma where defendant was forced to stop the car to avoid a roadblock. Defendant Potts got out of the car and stated: "They are after me, they are chasing me." In the words of Trooper Dorsey, "he didn't appear to be all there." Potts was immediately arrested for reckless driving and taken to jail. Dorsey remained with the car and called a wrecker to impound it. He then searched the car and found a tin box containing marijuana in the glove compartment and a marijuana plant in the trunk. Defendant contends that this was an unlawful search. The trial court sustained the search upon two separate grounds: (1) a lawful inventory search, and (2) a valid search incidental to a lawful arrest. We agree that it was a lawful inventory search and thus do not reach the second ground.

In *State v. Montague*, 73 Wn.2d 381, 438 P.2d 571 (1968) our Supreme Court sustained the validity of an inventory search when conducted after a lawful arrest and preparatory to or following a reasonable impoundment. Defendant Potts contends, however, that the present search was an unlawful exploratory search, because Trooper Dorsey suspected that Potts, because of his strange behavior at the time, was under the influence of alcohol or drugs. We are not unmindful of the difficulty in distinguishing between a reasonable and lawful inventory search and an unlawful exploratory search. The ultimate determination

must be based upon the facts of the particular search in question. The record reflects that defendant, the sole occupant of the car, was in custody pursuant to a lawful arrest. There was no one to attend to the car. Consequently, Trooper Dorsey, pursuant to regulations, impounded and searched the car. At trial he stated that he conducted the search for the dual purpose of protecting the contents from possible theft and the police from false claims of theft.

The record indicates that there was sufficient evidence to support the trial court's finding that the search was not exploratory, but was conducted in good faith for the purpose of taking an inventory of the contents of a car that had been justifiably impounded. We will not disturb its finding.

Defendant's second assignment of error challenges the admissibility of exhibits 1 and 3. Exhibit 1 was the tin box containing marijuana and exhibit 3 was the marijuana plant. Defendant argues that the exhibits are not admissible because there had been a "break in the chain of evidence." Because proof of illegal possession of either exhibit would be sufficient to sustain conviction, we will, for the sake of brevity, limit the inquiry to whether exhibit 3, the marijuana plant, was properly received into evidence. Exhibit 3 was seized by Trooper Dorsey, the arresting officer. He initialed the plant and delivered it to Officer White of the Narcotics Division of the Tacoma Police Department. At trial, Trooper Dorsey, identified the plant and stated it was "in substantially the same condition" as before. That testimony alone was sufficient. An exhibit is sufficiently identified when it is identified as being the same object and when it is declared to be in the same condition as at the time of its initial acquisition by the state. *State v. Russell,* 70 Wn.2d 552, 424 P.2d 639 (1967). Exhibit 3 was properly admitted into evidence.

Defendant next challenges the trial court's decision to allow Officer Potter to testify as to the result of marijuana identification tests conducted upon exhibit 3.

Officer Potter, a member of the Records and Identification Division of the Tacoma Police Department, conducted three widely recognized tests upon exhibit 3. All three tests positively identified exhibit 3 as marijuana. Defendant contends however that Officer Potter was not qualified to testify as an expert witness. The contention lacks merit.

The determination of the qualifications of an expert witness is a matter within the discretion of the trial court. *State v. Nelson*, 72 Wn.2d 269, 432 P.2d 857 (1967). The trial court did not abuse its discretion. The record shows that Officer Potter has received chemical analysis training and has performed over 250 marijuana identification tests. Defendant's next assignment of error concerns the quantum of proof necessary to sustain a conviction of the crime of illegal possession of narcotics. It is well established that the state need not prove actual possession but that proof of constructive possession will suffice. *State v. Callahan*, 77 W.D.2d 26, 459 P.2d 400 (1969). Defendant contends however that the evidence was insufficient to prove constructive possession. More specifically, he contends that the state's failure to allege or prove that he was the owner of the car in which marijuana was found was fatal. We do not agree.

Constructive possession is proved when it can be said a person has dominion and control over the property alleged to be possessed. *State v. Walcott*, 72 Wn.2d 959, 435 P.2d 994 (1967). What constitutes dominion and control is not so clear. In *State v. Callahan, supra,* the court reviewed cases that have involved constructive possession of narcotics and drugs and concluded that in each instance there was evidence that the defendant had dominion and control of either the drugs or the premises on which the drugs were found. In the instant case, it is clear that the defendant had dominion and control over the "premises." He had the keys to the car and was driving it. He was the sole occupant of the car. We believe these facts sufficient to support the trial court's finding that the defendant was in dominion and control over the contents of the car, to wit; the marijuana.

That being so, it was incumbent upon defendant to establish that his possession was unwitting, lawful or otherwise excusable. *State v. Morris*, 70 Wn.2d 27, 422 P.2d 27 (1966).

Defendant finally contends that the trial court abused its discretion in imposing sentence.

Following the rendition of its oral decision of guilt, the court set the sentencing date for November 21, 1968. On that date the court heard argument relative to the sentence that should be imposed. Defendant's counsel pleaded leniency. Because of defendant's apparent lack of any previous criminal convictions, the deputy prosecutor recommended that he be placed on probation with the condition he serve 6 months in the county jail. What transpired next, within the span of a few minutes, is more than a little mystifying. The court orally imposed the maximum sentence but placed defendant on probation with the condition he serve 1 year in the county jail. The court then directed the prosecutor to prepare an order to that effect; and asked defendant for permission to sign the judgment and sentence, ex parte, at a future date. Both defendant and his counsel gave their consent. Defendant's counsel then gave notice of appeal and the following colloquy between the court, Mr. Haas, defendant's counsel, and Mr. Johnson, the Deputy Prosecutor, took place:

> THE COURT: I started to interlineate on this Proposed Judgment and Sentence, Mr. Johnson, can you prepare another one as this one is prepared as long as the oral sentence is prepared. *I may change my mind.*
> MR. JOHNSON: How about this one?
> MR. HAAS: I think those should be filed.
> THE COURT: I think you should bring the defendant back into court when I sign the Judgment and Sentence, Mr. Haas.

(Italics ours.)

With that statement the court was adjourned. On November 27, 1968 with all parties present the court stated:

> THE COURT: I have reconsidered this, gentlemen. I have heretofore recognized the guilt on the part of the defendant, and on the oral information at the time the matter came before me originally my intention was to suspend

the sentence. After reflection I am not going to suspend the sentence. It is the Judgment and Sentence Richard L. Potts that you be confined to the Department of Institutions for not more than twenty-years nor not less than five-years. Let the record reflect that the Court is signing the Judgment and Sentence in open Court in the presence of the defendant. Do you wish to undertake representation of the defendant?

Mr. HAAS: Yes, your Honor, I do, I would like to review some developments—

THE COURT: Let the record reflect that Mr. Henry Haas is appointed to represent the defendant on appeal. The Court will fix a five-thousand dollar bond pending appeal. Will you prepare an order fixing the bond?

Mr. JOHNSON: I will, you Honor. Would you waive being present when it is signed so it can be signed Ex parte?

Mr. HAAS: Yes. Your Honor, I may not be—I am just simply—I am rather speechless to tell you the truth.

THE COURT: It may come as a surprise to you, Mr. Haas, but it does not come as a surprise to the Court, because I have thought it over thoroughly.

Mr. HAAS: As I say I am—the Court obviously is under no legal obligation or any other obligation to indicate a reason, but frankly in view of the fact that the man has no record, as I say, possession of marijuana.

THE COURT: The fact that a man doesn't have a record doesn't mean that it is a first offense.

Mr. HAAS: I understand that.

THE COURT: Under all the circumstances, I don't wish to discuss the matter, and I don't wish to hear argument on it. My mind is made up.

■ As a prelude to the consideration of defendant's assignment of error, we note: (1) a trial court is given statutory authority to grant or deny probation. RCW 9.95.200; and that (2) probation is not a right but a matter of grace, privilege, or clemency and the granting or revocation of probationary status is a determination that rests almost exclusively within the trial court's discretion. *State ex rel. Schock v. Barnett,* 42 Wn.2d 929, 259 P.2d 404 (1953); *State v. Riddell,* 75 Wn.2d 85, 449 P.2d 97 (1968).

Defendant contends that the trial court abused the discretion invested in it by imposing the maximum sentence

after originally imposing an oral probationary sentence. We agree.

The concept of judicial discretion is easy to define but difficult to measure. It is clear that there are gradations of discretion ranging from near total authority to very limited effect. Because of the very nature of probation and definite lack of legal guidelines, we suspect that the discretion given to a trial court in such a matter is broad. Nevertheless, the discretion to be exercised in the act of imposing a sentence must have some limitations.

All judicial discretion is capable of being abused; it is abused when its exercise is arbitrary, capricious or unreasonable.

> The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to "the primordial necessity of order in the social life." Wide enough in all conscience is the field of discretion that remains.

(Footnote omitted.) Cardozo, The Nature of the Judicial Process, Yale University Press 141 (1921).

In the instant case our review of the trial court's action is hampered by a record which does little to reveal the basis of the discretionary determination. We have set forth above the colloquy which took place at the time of the court's ruling and note the court's failure to place in the record its reasons for the new sentence. This failure has rendered our task on appeal a difficult one. We are not stating that the trial court had to formally give reasons for its action, but the record should supply some insight.

Nowhere in the record is there any indication that any new or additional information was received by the trial court subsequent to its oral imposition of sentence. On the contrary, the record affirmatively indicates that the court was contemplating a change within minutes of its oral deci-

sion. So far as the record reveals, the only intervening event that transpired within that time interval was defendant's notice of appeal. Manifestly, the declaration of an oral notice of appeal would not provide a sufficient reason for the trial court's imposition of a more severe sentence than originally intended. Because of the insufficient record, we are not willing to say that the trial court "revoked" its oral probationary sentence solely for the reason that defendant gave notice of appeal; but we do conclude that the only thing in the record which could explain the trial court's action was the fact defendant appealed.

That being so, and limited to what is before us, we can only conclude that the trial court's action was arbitrary. Accordingly, the case must be remanded for resentencing with the instruction that the oral sentence be imposed or reasons given why it should not.

ARMSTRONG, C. J., and PEARSON, J., concur.